IN THE

# SUPREME COURT OF TENNESSEE,

FOR THE

# MIDDLE DIVISION.

NASHVILLE, DECEMBER TERM, 1890.

HICKS AND PORTER, Ex'rs, v. PORTER.

(*Nashville.* February 17, 1891.)

1. APPEAL. *Does not bring up a former decree for review, when. Case in judgment.*

Executors obtained, by bill against the devisees and legatees, a discharge as such, and, by direction of the Court, delivered the entire trust estate, consisting of notes, stocks, etc., into the Clerk and Master's hands. Afterward the Court ordered the guardian *ad litem* and solicitor for the infant defendants to institute suit for the collection of one of these notes belonging to the estate. The note was accordingly collected by suit. At a subsequent term the guardian

1—6 P

*ad litem*, upon his petition filed in the original cause, was allowed a fee for this service, in addition to that which had been allowed for services rendered in the original cause. Appeal was taken from the latter decree alone.

*Held:* That this appeal did not bring up for review the order or decree which had been previously made directing the guardian *ad litem* to collect the note. (*Post, pp. 10–15.*)

Cases cited and approved : Gilchrist *v.* Cannon, 1 Cold., 590; Patterson *v.* Arnold, 4 Cold., 368, 369; Caldwell *v.* Hodsden, 1 Lea, 46, 47; Wooten *v.* Daniel, 16 Lea, 156.

2. CHANCERY PRACTICE.    *Concurrent finding of Master and Chancellor. Case in judgment.*

Doctrine re-affirmed that this Court, in the consideration of matters of account, will give to the concurrent findings of Master and Chancellor upon controverted questions of fact, no less weight than attaches to the verdict of a jury and judgment thereon at law ; and this doctrine is applied in this cause to proceedings to ascertain and fix the amount of a guardian *ad litem's* fee. (*Post, pp. 13–14.*)

Cases cited and approved: Brown *v.* Dailey, 85 Tenn., 218; Turley *v.* Turley, 85 Tenn., 251.

3. ·SAME.    *Costs of proceedings to fix amount of guardian ad litem's fee. By whom paid.*

The entire costs of proceedings to ascertain and fix amount of guardian *ad litem's* fee should not be taxed against the estate or funds of the infant wards. In this cause one-half the costs was taxed to the guardian *ad litem*, and the other half to the parties, infant and adult, interested in the estate involved.

---

FROM  DAVIDSON.

---

Appeal from Chancery Court of Davidson County. ANDREW ALLISON, Ch.

VERTREES & VERTREES for N. D. Malone.

J. M. HEAD, guardian *ad litem, contra.*

ED BAXTER, SP. J.  A. J. Porter died testate
in Davidson County, Tennessee, on February 11,
1888, having first made his last will, by which he
gave to his wife all of his furniture, books, pict-
ures, plate, etc., and directed that the residue of
his property, real and personal, should be distrib-
uted between his wife and children in such way
and manner as is provided by the laws of the
State.

He appointed his wife and E. D. Hicks his
executors, with power to sell all, or any part of
his estate, and re-invest the proceeds, and to ap-
point commissioners for the partition of any por-
tion of his estate.

The executors paid off all known debts of the
estate, and on August 22, 1888, passed their ac-
counts before the County Court, with a view to
a final settlement of their administration.

On September 8, 1888, the executors filed a bill
in the Chancery Court at Nashville against the
four children of the testator, three of whom were
minors without any general guardian.

The bill stated, among other things, that the
executors then had in their hands $18,046.36 in
cash, for the general purposes of the trust; and
notes not due, stocks, bonds, and judgments to a
large amount; and that the real estate of the
testator was valued at about $84,000.

The bill further stated that several serious diffi-
culties had arisen in the administration of the
trust; and among them the delicate duty of them-

selves appointing commissioners to set apart to one
of the complainants, who was the widow of the
testator, her share of the estate; and the impossi-
bility, after faithful effort, of securing suitable
persons to act as guardians for the minor children;
that among the assets were certificates of American
Cotton-seed Trust to the nominal amount of $80,-
700, and the question was submitted to the Court
whether that asset should not at once be divided
in kind, giving to the adults their shares, and the
Court deciding what was best for the minors.

The bill prayed that complainants be permitted
to bring into Court the assets in their hands, and,
having passed their accounts, to be permitted to
resign their trusts; that the estate, real and per-
sonal, be divided among those entitled, dower being
assigned to the widow; that the minors be made
wards of the Court, and their shares in the estate,
real and personal, be taken charge of and man-
aged by the Court.

The complainants filed as an exhibit to the bill,
a list of assets, in which was included the certifi-
cates of American Cotton-seed Trust, of the nomi-
nal value of $80,700; and the complainants stated
that they were then worth $5,000 or $6,000 more
than when received by the complainants; and that
they had been held at the request of members of
the family and friends, and under the power given
in the will to re-invest. A list of the real estate
was also filed, the value of it being $83,850.

On October 2, 1888, N. D. Malone, a practicing

solicitor of the Court, was appointed guardian *ad litem* for the three minor children, "to appear and defend their interests in this cause."

On the next day he · filed a formal answer, placing "their interest under the care of . the Court."

On October 31, 1888, a decree was rendered that the executors should pass their accounts before the Clerk and Master, and pay over to the Clerk and Master the balance that might be found in their hands, and also all stocks, bonds, notes, and other choses in action, and personal property of every description held by them; that the Clerk and Master should report the cash value of all personal assets turned over to him by complainants; and that an account should be taken of the advancements made by the testator to his children. Commissioners were appointed to set apart a year's support, and to allot dower to the widow, and to partition the real estate among those entitled.

The complainants passed their accounts before the Clerk and Master. The settlement made by them with the County Court was taken as *prima facie* correct, and no attempt was made to surcharge or falsify it.

The Clerk and Master reported a cash balance in their hands of $18,715.57, and a large amount of notes, stocks, bonds, etc., belonging to the estate, the estimated cash value of which was $63,004.71. The American Cotton-seed Oil Trust certificates, of the nominal value of $80,720.98, .

were estimated to be worth $44,487.53; and two notes executed by Maria E. Crutcher, aggregating nominally $17,513.47, were estimated to be worth $5,000.

The advancements were collated, and the cash and good personal assets were distributed. The share of each minor child amounted to $22,359.56, and the shares of the three minors aggregated $67,078.68.

The commissioners set apart $4,500 as a' year's support for the widow and her minor children.

There does not seem to have been any litigation, or even controversy, in regard to the settlement of complainants' accounts, or the distribution of the personalty, or the year's support.

On November 20, 1888, the report of the Clerk and Master as to complainants' settlement and the distribution of the personalty, and the report of the commissioners as to the year's support, were confirmed without exception; and it was ordered that upon the complainants paying into the hands of the Clerk and Master the cash and personal assets in their hands, they should be fully discharged of their trust.

It was ordered that the shares of the minors in the cash and the notes, stocks, bonds, and choses in action, etc., which were undoubtedly good, should be carried to the account of each of the minors respectively; that those of said stocks, bonds, and choses in action, etc., as to which there was any doubt, should be retained for the present

undivided; but as to the shares of the cotton-seed oil trust, the Clerk and Master was ordered to take proof, and report whether all, or at least the shares of the minor defendants, should be retained or sold. It was further ordered that the share of an adult married daughter in the real estate of the testator should be subjected to a lien to secure the excess of her advancements over her distributive share.

It was further ordered that Demoss & Malone, solicitors for complainants, be paid $500 in full for all services; and that N. D. Malone, guardian *ad litem* for the minor defendants, be paid $100 "for his services rendered up to this date," it appearing to the Court that it was reasonable and that there was no necessity for a reference, said sum to be "in full payment of his services up to this date." The Clerk and Master was directed to lend out, on call, upon good collaterals, the cash of the minor defendants.

It seems that the guardian *ad litem*, N. D. Malone, between November 26 and December 5, 1888, took the statement of nine witnesses as to the advisability of selling the American Cotton-seed Oil Trust certificates. Six of the witnesses regarded it as a speculative stock, unfit for an investment of minors' property. One of them stated that the testator, a few days before his death, had sold $20,000 of it at $31.56 per $100.

Two of the witnesses advised against the sale of the stock at that time, believing that by June,

1889, it would go higher. The remaining witnesses expressed no opinion as to the advisability of a sale. The stock seems to have fluctuated from 70 to 24 cents on the dollar; and about December 3, 1888, it was quoted between 56 and 52 cents on the dollar.

The Clerk and Master advised that for the present the stock should be held for the minors.

Mr. N. D. Malone, guardian *ad litem*, excepted to the report, because the property of minors should not be allowed to remain in speculative stock.

On December 5, 1888, the exceptions were over-ruled, and the report confirmed, with leave, however, to the guardian *ad litem* to renew the motion at any time. The Clerk and Master carried to the account of each minor his or her share of said certificates.

On December 11, 1888, the Clerk and Master reported that he had received from the complainants the cash; and had distributed among the widow and children of the testator the cash and certain of the personal assets, which the guardian *ad litem*, Mr. Malone, and one of the complainants had concluded should then be distributed.

Certain specified bonds, stocks, or notes were set apart to each of the parties in severalty, the amount received by each of the minors in that distribution amounting to $6,464.72. The report was confirmed; and the Clerk and Master was directed, after valuing the certificates of the cotton-seed oil trust, to divide the same.

Hicks and Porter, Ex'rs, *v.* Porter.

On December 18, 1888, the commissioners' report, allotting the widow's dower and partitioning most of the real estate, was confirmed. The share of each of the minors in the real estate partitioned was valued at $15,125, and the three shares aggregated $45,375. Titles were vested and divested as to the real estate partitioned, and the remaining real estate was ordered to be sold for division. The real estate partitioned to the married daughter was subjected to a lien to secure the excess of her advancement over her share in the estate.

On January 1, 1889, upon motion of the guardian *ad litem* to re-open the matter of the sale of the cotton-seed oil trust certificates, leave was granted to recall one of the witnesses who had advised against the (then) present sale of the stock, and the Clerk and Master was ordered to report instanter whether it was then advisable to sell the stock.

The witness stated that, from certain information which he had acquired, he thought that the stock should be put in a position "to be sold at once."

The Clerk and Master reported in favor of a sale; and the Court ordered the stock to be sold as soon as possible.

The stock was sold about January 11, 1889, at a fraction over 51 cents on the dollar. The proceeds of sale amounted to $41,458.76; and the proceeds were ordered to be distributed among the parties entitled, having regard to the advancements made to the married daughter.

On March 11, 1889, a reference was ordered to ascertain what would be a reasonable allowance for each minor to pay board, clothing, tuition, etc., per month. Testimony was taken, and a report was made and confirmed making an annual allowance of $1,075 for each of the minors.

On June 14, 1889, J. W. Allison and wife filed a petition in the case for leave to exchange lots with certain parties. The guardian *ad litem*, N. D. Malone, answered the petition for the minors, and a reference was ordered to ascertain and report whether the exchange would be manifestly to the best interests of the defendants.

On September 26, 1889, Montague Lyon filed a petition in the case, offering to purchase the shares of the minors in a certain strip of ground. N. D. Malone, guardian *ad litem*, answered the petition; and on October 8, 1889, a reference was ordered to ascertain whether it would be to the manifest interest of the minors that the sale should be made at the price offered; and also to take proof and report what would be reasonable compensation for N. D. Malone up to date, and what would be reasonable compensation annually for him.

On October 21, 1889, N. D. Malone, guardian *ad litem*, filed his deposition in the case, in which he gave a brief summary of the proceedings which had taken place in the case up to that time, and of the services performed by him. The deposition concluded thus: "*There are other assets for the collection of which suits are now pending, in*

Hicks and Porter, Ex'rs, *v.* Porter.

*which cases I will expect compensation.* I have been
paid $100 out of the general fund; I think I
should be paid $500 additional for the responsible
work *already done*, and have an allowance of $250
per year from October 1, 1889."

The statements of three solicitors were taken,
who expressed the opinion that the compensation
suggested by Mr. Malone was entirely just and
reasonable.

On October 22, 1889, the Clerk and Master re-
ported that $500 (in addition to the $100 already
paid him) would be a reasonable allowance *for the
services already rendered* by him, and that thereafter
$250 annually from October 1, 1889, would be a
reasonable allowance. The report was confirmed,
"*the Court having knowledge of the services performed,*
and being of opinion that the fee is very moder-
ate," the Clerk and Master was ordered to pay to
Mr. Malone the sums reported "for his services *in
this case.*"

No appeal was prayed from said decree; and
no writ of error has ever been sued out to re-
verse it.

On December 12, 1888, upon the suggestion of
the executors that it was for the interest of the
minors to foreclose the mortgage given by Mrs.
Crutcher to secure her note for near $13,000, then
in the hands of the Master, and past due, it was
ordered "that the guardian *ad litem* take steps at
once to collect said note, using the names of the
executors for use of the parties in interest;" and

the Master was directed to furnish the guardian *ad litem* with the mortgage and notes in question, or copies of the same.

On December 13, 1888, Mr. N. D. Malone, as solicitor and guardian *ad litem*, filed a bill in the Chancery Court at Nashville, in the name of the executors of A. J. Porter, for the use of his widow and three minor children, against Maria E. Crutcher and others, to foreclose said mortgage, and to subject certain gas stock to the payment of said note, and for an injunction to restrain the transfer of the stock pending the suit.

Mr. Malone became surety on the injunction bond.

On January 1, 1889, two of the defendants answered. On June 3, 1889, another defendant answered.

Receivers were appointed to take charge of the gas stock, and Mr. Malone became surety upon their bonds.

The bill was taken for confessed as to the other defendants, and on December 20, 1889, the case was heard on bill, answer, *pro confesso*, proof, and argument of counsel; when the Chancellor rendered a decree in favor of the executors of A. J. Porter, for the benefit of his widow and three minor children, against Maria E. Crutcher, for $20,-257.91 and costs; and it was ordered that the gas stock and an undivided one-half interest in 249 acres of land, be sold to pay the decree. The result of the suit was, in brief, to collect the whole amount of the decree.

On April 4, 1890, Mr. N. D. Malone filed his petition *in this case*, making his minor wards defendants, and praying that he be allowed a fee of $1,500 for his services *in the suit against Mrs. Crutcher.* Process issued under said petition, and was served upon the minors. Mr. J. M. Head was appointed guardian *ad litem* for them, and answered the petition; and the Clerk and Master was ordered to take proof, and report what would be a reasonable fee for the services rendered by Mr. Malone, as set forth in his petition; and what portion thereof should be paid by the minors. A number of witnesses were examined and cross-examined. The Clerk and Master reported that $1,500 would be a reasonable fee for the services rendered by Mr. N. D. Malone in the case of *Hicks and Porter, Ex'rs*, v. *Maria E. Crutcher*, and that the three minors should bear three-fifths of the fee.

Mr. J. M. Head, guardian *ad litem*, filed four exceptions to the report, all of which were overruled, and the report was, on June 24, 1890, confirmed by the Court; and "from the foregoing decree" the guardian *ad litem* prayed an appeal to this Court.

The first assignment of error by the guardian *ad litem* is that "the Court erred in affirming the report of the Clerk and Master, because it is not sustained by the evidence, and because the fee charged is unreasonable and unjust in view of the services rendered."

The rule of this Court is, that the concurrent

finding of the Chancellor and the Clerk and Master shall have no less weight than attaches to the verdict of a jury and judgment thereon at law.

In such a case it must affirmatively appear that the decree is clearly wrong. There was certainly some evidence to sustain the decree, and we therefore overrule this exception. *Brown* v. *Dailey*, 1 Pickle, 218; *Turley* v. *Turley*, 1 Pickle, 251.

The second assignment is, "that the Court erred in allowing any portion of the $1,500 fee claimed to be charged to the estate of the minors, because the services of the guardian *ad litem*, in so far as he represented them in the suit against Mrs. Crutcher, had previously been paid for by the $500 fee already allowed and the annual allowance which he had received in payment for his services down to October 1, 1890."

The $500 fee was paid and the annual allowance was made for services rendered and to be rendered in *this* case, while the $1,500 fee was allowed for services rendered in the suit against Mrs. Crutcher.

We therefore overrule this assignment.

The third assignment is, that "the Court erred in allowing the guardian *ad litem* to return any portion of the allowance which he had received, and insisting upon the collection of the full $1,500 claimed by him."

If the guardian *ad litem* has the right to claim the $1,500 allowed for his services in the *Crutcher* suit, as we think he has, then any amount which

he may have refunded of the allowance made to him for services in *this* case is so much to the advantage of the minors, and therefore they cannot .complain.

We accordingly overrule the third assignment.

The fourth assignment is, that " the Court erred in directing the bill for the foreclosure of the Crutcher mortgage to be filed by the guardian *ad litem,* but should have required the Clerk and Master, as receiver or custodian of the notes, to take such action as may have been necessary to secure their collection, and to have made such contracts in advance with attorneys, with reference to their fees, as may have seemed best for the interest of the parties represented by him, including the minors."

The decree ·directing the bill for the foreclosure of the Crutcher mortgage to be filed by the guardian *ad litem,* was rendered December 12, 1888, and no appeal .from it was prayed. The appeal which was taken in this case was from the decree of June 24, 1890, and it confers no authority upon us to examine into the correctness of the decree of December 12, 1888. *Gilchrist* v. *Cannon,* 1 Cold., 590; *Patterson* v. *Arnold,* 4 Cold., 368, 369; *Caldwell* v. *Hodsden,* 1 Lea, 46, 47.

The filing of the transcript in this Court, without application for a writ of error to review the decree of ˌDecember 12, 1888, confers no jurisdiction upon this Court to examine into the correctness of said decree. *Wooten* v. *Daniel,* 16 Lea, 156.

We therefore overrule the fourth assignment.

The fifth assignment is, that the "Court erred in allowing a fee of about $1,700 in the aggregate, to be paid out of the minors' estate, for the services rendered by the guardian *ad litem*, in any aspect of this case."

This is, in substance, the same as the second assignment, which we have overruled, and we therefore overrule this assignment.

The sixth assignment is, that the Court erred in directing the costs of the proceeding to be paid by the minors.

The proceeding became necessary because the minors did not have the legal capacity to bind themselves by an agreement as to what the fee should be. They were, however, in nowise to blame for their want of legal capacity to act in the matter, and therefore they, and those interested with them, ought not to have been required to pay all the costs of the proceeding.

We think that one-half the cost of the proceeding in the Court below to ascertain Mr. Malone's fee in the Crutcher suit, should have been decreed against him, and the other half against the parties interested in the recovery in the Crutcher suit, the minors to pay three-fifths of that half; and the Chancellor's decree will be modified to that extent, but in all other respects it is affirmed.

The cost of the appeal will be paid by the appellant, J. M. Head, guardian *ad litem*, and the amount will be refunded to him out of the estate of his wards.